IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| WALTER JOHNSON, | ) | |
| --- | --- | --- |
| Petitioner, | ) | |
| v. | ) | Case No. 4:15-cv-00281-AGF |
| UNITED STATES OF AMERICA, | ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Petitioner Walter Johnson's motion filed under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. On August 28, 2013, Petitioner pled guilty to the lesser included offense of conspiracy to possess with the intent to distribute cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1). On February 20, 2014, the Court sentenced Petitioner to 102 months in prison and three years of supervised release.

In his pro se motion to vacate and set aside his conviction and sentence, Petitioner claims that: (1) the Government engaged in prosecutorial misconduct by pursuing a case in which agents of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") exhibited outrageous government misconduct; and (2) plea counsel was ineffective for failing to assert the defenses of prosecutorial misconduct/outrageous government conduct and entrapment. For the reasons set forth below, habeas relief will be denied.

## BACKGROUND

**Criminal Proceedings**

On May 22, 2013, Petitioner and seven other co-defendants were indicted on two counts: (1) conspiracy to possess with intent to distribute more than five kilograms of cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1); and (2) conspiracy to possess a firearm during and in relation to a drug-trafficking crime, in violation of 18 U.S.C. § 924(o). The charges arose out of a reverse sting operation, in which Petitioner and the other defendants agreed to rob and steal a substantial amount of cocaine from what they believed to be a drug stash house. As charged, Count One carried a mandatory minimum sentence of at least ten years, and not more than life.

During the pretrial phase of the case, the prosecutors disclosed discovery to Petitioner, and Petitioner was given the opportunity to file pretrial motions. Petitioner did not elect to file pretrial motions, however, and instead appeared before the Magistrate Judge and knowingly and voluntarily waived his right to file pretrial motions. *United States v. Johnson, et al*, No. 4:13-CR-192-AGF-1, ECF Nos. 158, 159 (E.D. Mo.). As reflected in the audio recording of the hearing, Petitioner represented, under oath, that he had discussed his case with defense counsel, that he was satisfied with his representation by counsel, that he was aware of his right to file pretrial motions, and that he was electing to waive that right. *Id.* at ECF No. 158.

On August 28, 2013, Petitioner entered into a guilty plea under Federal Rule of Criminal Procedure 11(c)(1)(A). Pursuant to the parties' Guilty Plea Agreement, in exchange for Petitioner's voluntary plea of guilty to the lesser included offense in Count

One, the Government agreed to dismiss Count Two. With respect to the sentence, the parties agreed that so long as Defendant did not request a sentence of less than 96 months, Defendant could request a sentence below the United States Sentencing Guideline (the "Guideline") range. The Government agreed not to seek a sentence above the applicable Guideline range. By permitting Petitioner to plead to the lesser included offense, Petitioner was no longer subject to the ten-year mandatory minimum sentence.

In the Guilty Plea Agreement, signed by both parties, Petitioner stipulated to the following facts. On or about May 2, 2013, Petitioner told a confidential informant of the ATF ("informant") that Petitioner intended to rob a marijuana dealer.[1] The informant advised Petitioner that the informant knew a person (hereinafter the "undercover agent") who could set up Mexican drug traffickers to be robbed of a large amount of cocaine. Petitioner met with the undercover agent, who told Petitioner that he was a disgruntled drug courier for a Mexican drug trafficking organization, and that he (undercover agent) would be picking up about four to five kilos of cocaine from the stash house in the next week or so. The undercover agent told Petitioner that he would inform Petitioner of the stash house's location in order for Petitioner and any of his recruited associates to rob it. The undercover agent told Petitioner that Petitioner and his associates would have to devise their own plan as to how to execute the robbery. Petitioner agreed to conduct the robbery and told the undercover agent that he would recruit associates.

---

[1] The description of the offense conduct in the Presentence Investigation Report states that the investigation began when the informant advised the ATF that Petitioner and his associates were planning to rob a marijuana dealer in St. Louis. *United States v. Johnson, et al*, ECF No. 312, at 4. Petitioner did not object to those facts.

3

On May 13, 2013, Petitioner and some of his associates met the undercover agent at a gas station, at which time the undercover agent explained the basic operations of the Mexican drug cartel and the dangers associated with their plan. Petitioner and his associates all acknowledged that they wished to participate in the robbery, agreed to pay the undercover agent eight kilograms of cocaine in exchange for brokering the robbery, and confirmed that they had access to firearms. Petitioner and his associates decided at some point after this meeting to recruit more individuals to assist in the robbery and the acquisition of the cocaine.

On May 15, 2013, the undercover agent advised Petitioner that he had been contacted by the Mexican drug cartel and was told to pick up cocaine from the stash house on May 16, 2013. That day, the undercover agent met with Petitioner and his associates an hour before the alleged drug pick-up to ensure that they were prepared to do the robbery. Petitioner advised the undercover agent that everyone was ready, and the undercover agent went through the plan for the robbery. Petitioner had the undercover agent drive him to collect additional associates to assist in the robbery, and the undercover agent then met with Petitioner and all of his associates in a fenced-in parking lot for a final meeting. The undercover agent again reviewed the plan, and Petitioner and his associates acknowledged the plan and agreed to proceed. The undercover agent then received a phone call from another ATF agent. The undercover agent pretended that the call was from a member of the Mexican drug cartel providing him with the address of the stash house. ATF agents who were located in the immediate area then moved in and arrested Petitioner and his seven associates. *Id.* at ECF No. 195.

At the change-of-plea hearing, Petitioner represented to the Court that he had enough time to discuss the charges, his case, and the plea agreement with his attorney. He further represented that he was satisfied with the representation he received from his attorney, and that there was nothing he wanted his attorney to do for him that the attorney had not done in representing Petitioner. *Id.* at ECF No. 375, at 7-8. Additionally, Petitioner represented that he had sufficient time to review the terms of the plea agreement with his attorney and address any questions Petitioner had about the plea agreement, and that he understood the terms of the plea agreement. The facts recited in the plea agreement were also reviewed, in detail, and Petitioner agreed, under oath, that the statements contained in the plea agreement were true. *Id.* at 11-13. Petitioner also represented that he understood that he would normally have the right to appeal both his conviction and his sentence, but that in the plea agreement, he was waiving his right to appeal all non-jurisdictional, non-sentencing issues, and all sentencing issues other than the calculation of his criminal history. *Id.* at 13-14. Petitioner also waived his right to contest his conviction and sentence in any post-trial proceedings, except for claims of prosecutorial misconduct and ineffective assistance of counsel. *Id.*

The Court ascertained the factual basis for the guilty plea and accepted the plea as knowing, intelligent, and voluntary. *Id.* at 39-40.

At the sentencing on February 20, 2014, the Court granted Petitioner's motion for a variance from the Guideline range,[2] and sentenced Petitioner to 102 months in prison,

---

[2] As set forth in the Presentence Investigation Report ("PSR"), the Guideline calculations provided for a base offense level of 33, and a criminal history score of III, resulting in a

and a three-year term of supervised release.  At the sentencing hearing, the Court again advised Petitioner that he had entered into a plea agreement that waived some or all of his rights to appeal his sentence, but advised Petitioner that if he believed that the waiver was not valid or did not cover some ground he wished to raise, he could present that theory to the appellate court.  Petitioner was also advised that he could appeal his conviction if he believed that his guilty plea was somehow unlawful or involuntary, or if there was some other fundamental defect in the proceedings that was not waived by his guilty plea.  *Id.* at ECF No. 376, at 21-22.  Petitioner did not file a direct appeal.

**Petitioner's Claims**

Petitioner claims in this pro se motion to vacate and set aside his conviction and sentence that plea counsel was ineffective for failing to assert the defenses of outrageous government conduct and entrapment and that the Government engaged in prosecutorial misconduct by pursuing a case in which law enforcement agents exhibited outrageous government misconduct.  Specifically, Petitioner argues that he "was never anything more than a car thief, with absolutely no experience or inclination to rob a drug stash house."  ECF No. 1-1, at 3.  Therefore, he contends he had no predisposition to commit the crime charged and that the Government wrongfully targeted him in its reverse sting

---

Guideline range of 168-210 months.  *Id.* at ECF No. 312, at 8-12.  At the sentencing hearing, however, the parties agreed to request that Petitioner be given the benefit of the two-level reduction for narcotics offenses that had been proposed by the Sentencing Commission but had not yet been adopted by Congress.  The Court agreed, applied the two-level reduction, and approached Petitioner's sentencing as though his total offense level was 31, resulting in a Guideline range of 135-168 months.  *Id.* at ECF No. 376, at 5-7.

operation. Petitioner supplemented his habeas petition on several occasions, pointing the Court to sources criticizing the use of reverse-sting operations. ECF Nos. 5 and 28.

## **DISCUSSION**

Pursuant to 28 U.S.C. § 2255, a federal prisoner may seek relief from a sentence imposed against him on the ground that "the sentence was imposed in violation of the Constitution or law of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255.

"Issues raised and decided on direct appeal cannot ordinarily be relitigated in a collateral proceeding based on [§ 2255]," and the Eighth Circuit has only deviated from that general rule in cases involving convincing new evidence of actual innocence or similarly extraordinary circumstances. *See United States v. Wiley,* 245 F.3d 750, 752 (8th Cir. 2001). A petitioner's ineffective assistance of counsel claim is properly raised under § 2255 rather than on direct appeal. *United States v. Davis*, 452 F.3d 991, 994 (8th Cir. 2006).

Claims brought under § 2255 may also be limited by procedural default. A movant "cannot raise a nonconstitutional or nonjurisdictional issue in a § 2255 motion if the issue could have been raised on direct appeal but was not." *Anderson v. United States,* 25 F.3d 704, 706 (8th Cir. 1994). Furthermore, even constitutional or jurisdictional claims that could have been but were not raised on direct appeal cannot be raised in a § 2255 motion unless the movant can establish "(1) cause for the default and actual prejudice or (2) actual innocence." *United States v. Moss,* 252 F.3d 993, 1001 (8th

7

Cir. 2001) (citing *Bousley v. United States,* 523 U.S. 614, 621 (1998)).

**<u>Evidentiary Hearing</u>**

"A petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and the files and the records of the case conclusively show that he is entitled to no relief." *Anjulo–Lopez v. U.S.*, 541 F.3d 814, 817 (8th Cir. 2008) (internal quotation marks and citation omitted). However, when the claim is inadequate on its face, or when the record affirmatively refutes the assertions on which a claim lies, no hearing is required. *Id*. As set forth more fully below, because Petitioner's claims are either refuted by the record or facially inadequate, the Court concludes that no hearing is required.

**<u>Prosecutorial Misconduct</u>**

Petitioner first argues that "government attorneys committed prosecutorial misconduct by electing to prosecute the instant matter where the ATF engaged in outrageous government conduct." ECF No. 1-1. Petitioner argues that he should not have been targeted in the Government's reverse sting operation, which is considered to be an "unpopular practice." *Id.*

At the outset, the Court notes that Petitioner's claim of prosecutorial misconduct has been procedurally defaulted because it was not raised on direct appeal, and Petitioner has not offered any allegations that would support findings of cause for the default and actual prejudice. *See Turner v. United States*, No. 4:10CV01350 ERW, 2011 WL 2580104, at *2 (E.D. Mo. June 28, 2011) (finding procedural default where movant failed to assert claim of prosecutorial misconduct on direct appeal) (citing *United States v. Moss,* 252 F.3d 993, 1001 (8th Cir. 2001)). In any event, however, Petitioner would not

8

be entitled to relief, even if the procedural bar were inapplicable.

Generally, to be entitled to relief due to prosecutorial misconduct, Petitioner must show that the prosecutor's conduct was improper and that the conduct affected his substantial rights so as to deprive him of a fair trial. *Id.* (citing *United States v. Fenner*, 600 F.3d 1014, 1022 (8th Cir. 2010)). Petitioner maintains that the Government engaged in outrageous conduct by conducting a reverse sting operation. He also contends that the Government's conduct of targeting him in this particular reverse sting operation was outrageous because he was a car thief with no inclination to rob a drug stash house.

The Court is unable to find legal authority for the proposition that prosecuting a case based on evidence obtained from a reverse sting operation, i.e. outrageous government conduct, constitutes prosecutorial misconduct. The outrageous-conduct argument often arises in cases where the Government has been involved in sting or reverse-sting operations, and it focuses on the government's conduct. See *United States v. Berg*, 178 F.3d 976, 979 (8th Cir. 1999); *United States v. Cannon,* 88 F.3d 1495, 1506 (8th Cir. 1996). The case law recognizes that the defense of outrageous government conduct applies if the action of a government agent "falls within the narrow band of the most intolerable government conduct." *United States v. Bugh*, 701 F.3d 888, 894 (8th Cir. 2012). "Law enforcement agents' conduct is so outrageous that due process principles bar the Government from using the judicial process to obtain a conviction only when agents' conduct violates 'that fundamental fairness, shocking the universal sense of justice, mandated by the Due Process Clause of the Fifth Amendment.'" *Id.* (citing *United States v. Russell*, 411 U.S. 423, 432 (1973)).

Like the Supreme Court in *Russell*, the Eighth Circuit has left open the possibility that, in rare instances, the investigative methods employed by law enforcement could be "so outrageous that due process bars the government from invoking the judicial process to obtain a conviction." *United States v. King*, 351 F.3d 859, 867 (8th Cir. 2003). However, the Eighth Circuit recently identified only two cases—both from the 1970s—in which a court of appeals deemed the Government's conduct so outrageous as to violate due process. *United States v. Combs*, 827 F.3d 790, 794 (8th Cir. 2016) (citing *United States v. Twigg*, 588 F.2d 373 (3d Cir. 1978) and *Greene v. United States*, 454 F.2d 783 (9th Cir. 1971)). It opined that "[a] sting operation involving a fake stash-house robbery is a common investigative tool designed to prevent actual stash-house robberies" and that "[i]nfiltration of a criminal enterprise is a 'recognized and permissible means of investigation' that often requires the Government agent to employ subterfuge, to participate in the planning of a crime, and even to provide resources for the crime." *Id.* (citing *United States v. Sanchez*, 138 F.3d 1410, 1413 (11th Cir. 1998)); *see also Bugh*, 701 F.3d at 894 (holding that while the Government engaged in "an aggressive and persistent investigation," it was "not conduct that shocks the conscience"). The Eighth Circuit concluded that "[c]onduct by investigators to present a realistic stash-house robbery scenario, to establish rapport with [the petitioner], or to facilitate commission of an offense by a preexisting robbery crew do not shock a universal sense of justice." *Combs*, 827 F.3d at 795.

Petitioner cannot establish that the Government's conduct in this case shocked the universal sense of justice mandated by the Due Process Clause. Although Petitioner is

10

correct that reverse sting operations have been criticized, the cases he cites do not support his theory that the actions of the Government in this reverse sting operation rose to the level of conduct so outrageous as to violate due process.

Moreover, Petitioner does not dispute that he approached a confidential informant indicating his intent to rob a marijuana dealer, and Petitioner recruited all of the co-defendants to assist him. Thus, the Government's action of targeting Petitioner in a reverse sting operation based on his statements to the confidential informant does not rise to the level of a constitutional violation. *See, e.g. United States v. Dixon*, 626 F. App'x 959, 961 (11th Cir. 2015) (concluding that launching a reverse sting operation after learning that the defendant wanted to rob a drug dealer was not outrageous government conduct). Accordingly, Petitioner's claim for habeas relief on the basis of prosecutorial misconduct, which necessarily requires a finding of outrageous government conduct, fails.

**Ineffective Assistance of Counsel**

Petitioner also contends that his attorney should have filed a motion to dismiss his indictment on the basis of outrageous government conduct and entrapment, and that his failure to do so constitutes ineffective assistance of counsel. Petitioner argues that his attorney failed to properly analyze these defenses and their potential for success.

"To establish ineffective assistance during plea negotiations, the petitioner must show 'counsel's representation fell below an objective standard of reasonableness' and 'that such deficient performance prejudiced' the defense." *Davis v. United States*, 858 F.3d 529, 532 (8th Cir. 2017) (quoting *Strickland v. Washington*, 466 U.S. 668, 688

(1984)). Prejudice in this context requires the petitioner to show that "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "[W]here the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." *Id.*

As discussed more fully above, Petitioner has failed to make the necessary showing that the defense of outrageous government conduct likely would have succeeded at trial.[3] Similarly, he cannot show that the entrapment defense would have been successful at trial, thereby failing to demonstrate prejudice for the purposes of an ineffective assistance of counsel claim.

The issue of entrapment also often rises in cases involving reverse-sting operations. While the defense of outrageous conduct focuses on the government's conduct, the entrapment defense focuses on the defendant's predisposition to commit a crime. *Berg*, 178 F.3d at 979. The entrapment defense "recognizes that law enforcement officers go too far when they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute." *United States v. Warren*, 788 F.3d 805, 810 (8th Cir. 2015). "Entrapment has two

---

[3] Further, as set forth above, Petitioner received a substantial benefit from the plea agreement, as he was otherwise facing a mandatory minimum sentence of ten years. And, the Guideline range on the lesser included offense in Count I, with application of the proposed two-level reduction under the Guidelines for narcotics offenses, was 135 to168 months.

elements: government inducement and a lack of predisposition on the part of the defendant to engage in the crime." *Id.* (citing *Mathews v. U.S.,* 485 U.S. 58, 62 (1988)).

Here, Petitioner does not dispute that the investigation began when he told a confidential informant that he and his associates intended to rob a marijuana dealer. Moreover, the plea agreement and Petitioner's statements to the Court, which carry a "strong presumption" of truth and "pose a formidable barrier" to a habeas challenge, refute Petitioner's contention that he had no predisposition to commit the crime charged. *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997). Petitioner fails to provide any evidence that he did not approach the undercover agent, nor has he provided any evidence that he did not understand his right to challenge the government's allegations and evidence, or that he did not understand the plea agreement.

As a result, Petitioner cannot demonstrate prejudice as a result of plea counsel's failure to raise the defenses of outrageous government conduct and entrapment.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner Walter Johnson's motion filed under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence is **DENIED**.

**IT IS FURTHER ORDERED** that this Court will not issue a Certificate of Appealability, as Petitioner has not made a substantial showing of the denial of a federal constitutional right as required by 28 U.S.C. § 2253(c)(2).

A separate Judgment shall accompany this Memorandum and Order.

                                                                          _____
                                                                          AUDREY G. FLEISSIG
                                                                          UNITED STATES DISTRICT JUDGE

Dated this 14th day of February, 2018.